IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

11th Cir. No. 20-14676-HH

AJ O'LAUGHLIN and
CRYSTAL LITTLE,

     Appellants,

vs.

PALM BEACH COUNTY, a political
subdivision of the State of Florida,

     Appellee.

_____/

**Appellants' Motion for Attorneys' Fees on Appeal**

WILLIAM R. AMLONG
Florida Bar Number 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar Number 275565
KAmlong@TheAmlongFirm.com

THE AMLONG FIRM
500 N.E. Fourth St.
Fort Lauderdale, FL 33301
Telephone (954) 462-1983
Facsimile (954) 523-3192

***Attorneys for the Appellants***,
    ***AJ O'Laughlin and Crystal Little***

**Appellants' Certificate of Interested Person
and Corporate Disclosure Statement**

<u>O'Laughlin, et al v. Palm Beach County</u>, 11th Cir. No.  20-14676-HH

 Appellants hereby give notice of filing the following Certificate of

Interested Person and Corporate Disclosure Statement:

Amlong & Amlong, P.A., d/b/a The Amlong Firm

Amlong, Karen Coolman

Amlong, William R.

Cure, Anaili M.

Dimitrouleas,  Hon. William P.

Hvizd, Helene

Fahey, Rachel

Little, Crystal

Matthewman, Hon. William

Nieman, Denise Marie

O'Laughlin, AJ

Palm Beach County

Palm Beach County's Attorney Office

Pelino, Andrew M.

     */s/ William R. Amlong*_____
     WILLIAM R. AMLONG

**Appellants' Motion for Attorneys' Fees on Appeal**

Appellants, AJ O'Laughlin and Crystal Little, move pursuant to 11th Cir. R. 39-3 and 42 U.S.C. § 1988 for entry of an order awarding them attorneys' fees related to this appeal, and state as grounds:

1.     This is an appeal from a final judgment entered November 12, 2020. This appeal raised two issues (one with sub-issues) regarding orders of the district court concerning Captains AJ O'Laughlin and Crystal Little's 42 U.S.C. § 1983 action to enforce their rights under the Free Speech and Freedom of Association clauses of the First Amendment to the United States Constitution concerning Palm Beach County Fire Rescue's Social Media Policy used to discipline them for statements made on O'Laughlin's invitation-only Facebook page posted as part of his campaign to become president of the International Association of Fire Fighters Local 2928

2.     Oral argument was held February 22, 2022. This Court issued an Opinion April 1, 2022, which affirmed in part and vacated in part the lower court's judgment in favor of Appellee and remanded the case for further proceedings. The period for rehearing expired April 22, 2022 [11th Cir. R. 40-3] without either party's having moved for rehearing, and the Court issued a Mandate May 2, 2022.

3.     Thus, pursuant 11th Cir. R. 39-3, Appellants move for entry of an order awarding them attorneys' fees related to his appeal pursuant to 42 U.S.C.

§ 1988.[1]  The Courts have interpreted Section 1988 to presumptively provide for attorneys' fees for prevailing plaintiffs. See, e.g., Ensley Branch, N.A.A.C.P. v. Seibels, 31 F.3d 1548, 1582 (11th Cir. 1994) ("It is well-settled that a [civil rights] plaintiff is a prevailing party [under 42 U.S.C. § 1988 ] and thus ordinarily entitled to a fee award of 'some kind' if the plaintiff has succeeded on 'any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit'"), citing Church of Scientology Flag Serv., Org. v. City of Clearwater, 2 F.3d 1509, 1513 (11th Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (footnote omitted))."  (Parallel citations omitted.)

4.      In this case, Appellants, who challenged the validity of Appellee's social media policy on two grounds, prevailed on two significant issues in the litigation through the portion of the Opinion that reversed district court's ruling on the free speech and overbreadth challenges to the policy, stating, in pertinent part, that:

> Next up: Plaintiffs contend that—on its face—the Fire Department's Social Media Policy is unconstitutionally overbroad.  The policy is indisputably broad: It prohibits "content that could be reasonably

---

[1]Section 1988(b) provides, in pertinent part, that:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public." . . .

*       *       *

The Social Media Policy here suffers from the same sort of "astonishing breadth." It expressly prohibits "disseminating content" that "could be reasonably interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public." In the Liverman court's words, that "could be just about anything." The district court here reasoned that the Social Media Policy's "For example"clause — which is found in Subsection (d) and catalogues a non-exhaustive list of topics that might trigger the prohibition—sufficiently narrowed the provision's reach. But here, as in Liverman, "the milder language in a single provision does not salvage the unacceptable overbreadth of the social networking policy taken as a whole." 844 F.3d at 409.

Slip. Op. at 14-15, 16-17 (appended as Attachment 1).

5.    Appended to this motion are:

*One*, the Unsworn Declaration Under Penalty of Perjury of William R. Amlong, Esquire, as to the basis for the fees that are being sought. See Attachment 2. Appellants' attorneys are seeking to be compensated $28,217.50  in attorneys' fees  at the hourly rates in effect since November 17, 2020, except for the period in 2021 when reduced rates were charged for the period of suspension imposed by the Florida Supreme Court and rates for law clerks/J.D. were used for attorneys William R. Amlong (March 8, 2021 - December 1, 2021)  and Jennifer Daley (March 8, 2021 - October 20, 2021). The Declaration includes the following summary of the fees claimed:

| Billed by | Role | Date of Admission | Hourly Rate | Total Hours Billed | Amount |
|---|---|---|---|---|---|
| WRA | Shareholder | 05/20/1985 | $600 | 13 | $600.00 |

| Billed by | Role | Date of Admission | Hourly Rate | Total Hours Billed | Amount |
|---|---|---|---|---|---|
| WRA91 | Juris Doctor (03/08/21 - 12/1/21) | 05/20/1985 | $325 | 27.5 | $8,937.50 |
| KCA | Shareholder | 6/14/1979 | $600 | 3.1 (after exclusions) | $1,860.00 |
| JED | Senior Associate | 9/19/1990 | $475 | 9.2 (after exclusions) | $4,370.00 |
| JED (JD91) | Juris Doctor (03/08/21 - 10/20/21 | 09/19/1990 | $300 | 17.8 | $5,250.00 |
| | | | **TOTAL** | **70.6** | **$28,217.50** |

*Two*, a computer-generated recap of the contemporaneously generated time records maintained for the appeal in this case. Attachment 3.

*Three*, the Forms to Accompany Application for Attorney's Fees (Attachment 4) prescribed by 11th Cir. R. 39-2 for the time for timekeepers claimed in the fees application:

        a.    William R. Amlong, Esquire (Attachment 4A);

        b.    Karen Coolman Amlong, Attorney at Law (Attachment 4B), and

        c.    Jennifer Daley, Attorney at Law (Attachment 4C).

    6.    Appellants have conferred with Appellee about the relief sought in this motion, including by filing a draft of this motion May 5, 2022. Appellee has indicated that it would respond with its position on the motion. As of the time of

the filing of this motion on the May 6, 2022 due date, Appellant has not received Appellee's position.

WHEREFORE, Appellants request entry of an order granting this motion; awarding them appellate attorneys' fees; and granting them such other and further relief as this Court deems appropriate.

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed and served electronically by CM/ECF this day and thereby transmitted electronically to all counsel of record or parties, including Helene C. Hvizd, Attorney at Law, hhvizd@pbcgov.org; Palm Beach County Attorney's Office, 301 N. Olive Ave., Suite 601, West Palm Beach, FL 33401 and Anaili Cure, Attorney at Law, acure@pbcgov.org; ldennis@pbcgov.org; webber@pbcgov.org, Palm Beach County Attorney's Office, 300 N. Dixie Hwy., St. West Palm Beach, FL 33401.

**Certificate of Compliance With Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements**

This computer-generated document prepared in Times New Roman 14 point font complies with the type-volume limit of 11th Cir. R. 32 and 27 because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2)(B), it contains 1,003 words.

Respectfully Submitted,


*/s/ William R. Amlong*
WILLIAM R. AMONG
Florida Bar Number 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar Number 275565
KAmlong@TheAmlongFirm.com

THE AMLONG FIRM
500 NE Fourth St., Suite 101
Fort Lauderdale, FL  33301
Telephone (954) 462-1983
Facsimile (954) 523-3192

**Attorneys for the Appellants,
AJ O'Laughlin and Crystal Little**

*C:\Users\jdaley\Downloads\220506 Appellant's motion for appellate fees.wpd*

# ATTACHMENT 1

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14676

_____

AJ O'LAUGHLIN,
CRYSTAL LITTLE,

Plaintiffs-Appellants,

*versus*

PALM BEACH COUNTY,
a political Subdivision of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:19-cv-80701-WPD

_____

Before NEWSOM, MARCUS, Circuit Judges, and STORY, District Judge.[*]

NEWSOM, Circuit Judge:

Pursuant to its Social Media Policy, the Palm Beach County Fire Rescue Department disciplined firefighters AJ O'Laughlin and Crystal Little for an exchange they had on an invitation-only Facebook page associated with O'Laughlin's campaign for the presidency of the local firefighters' union. In particular, O'Laughlin and Little accused union officials of conspiring with Fire Department management to misuse member-donated paid time off. We must decide whether, by punishing O'Laughlin and Little, the County violated their First Amendment rights to free speech and free association.

The district court dismissed O'Laughlin and Little's as-applied free-speech and free-association claims on the pleadings, and subsequently granted summary judgment for the County on their claims that the Social Media Policy was unconstitutionally overbroad and vague on its face. After careful review, we affirm the district court's judgment as to the free-association and vagueness claims but vacate and remand as to the free-speech and overbreadth claims.

_____

[*] Honorable Richard W. Story, United States District Judge for the Northern District of Georgia, sitting by designation.

# I

## A

O'Laughlin and Little—to whom we will sometimes refer collectively as "plaintiffs"—are both captains in the Palm Beach County Fire Rescue Department. Importantly for present purposes, both are also members of the International Association of Firefighters Local 2928—which, for brevity's sake, we'll simply call "the union."

At the time of the incident underlying this case, O'Laughlin was running for the union presidency. As part of his campaign, he created an invitation-only Facebook page, on which he posted a comment accusing the union's First Executive Vice President—Captain Jeffrey Newsome—of attempting to misuse, for his personal benefit, time that union members had donated to the Union Time Pool. The UTP consists of union-member-donated hours that union officers can use on days that they would otherwise have to take off from their regular work in order to conduct union business. O'Laughlin's Facebook post accused Newsome of conspiring with Fire Department management to use donated UTP time on Thanksgiving and Christmas Days—on which, all agree, he wouldn't have been transacting any union business. O'Laughlin posted a screenshot of the UTP calendar and stated, as relevant here: "This is your Union leadership. Wtf. When elected this will stop." For her part, Little responded: "Thanks AJ for keeping them accountable. And on that note our fucking stellar staffing officer just blindly approves it? Wtf!"

O'Laughlin and Little were disciplined for their comments with a "written warning," per the Fire Department's Social Media Policy. In relevant part, the Social Media Policy provides as follows:

<u>Personal Use</u>:

. . .

d. Employees are prohibited from disseminating content that is inconsistent with the duties, conduct, and responsibilities of a Fire Rescue employee including content that could be reasonably interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public. For example, unprofessional, unbecoming, illegal, unethical, sexual, violent, harassing, racist, sexist, or ethnically derogatory comments, pictures, artwork, videos, material or other such references all tend to undermine the public trust and confidence required by employees of the Fire Rescue.

. . .

g. Employees who choose to maintain or participate in social media or social networking platforms while off-duty shall conduct themselve[s] with professionalism and in such a manner that shall not reflect negatively upon this agency or its mission.

. . .

i.  Failure to comply with the above guidelines may
result in discipline up to and including termina-
tion. . . .

j.  Fire Rescue personnel shall not post, transmit, or
otherwise disseminate any information (photo-
graphic or text) to which they have access as a result
of their employment without written permission
from the Fire Rescue Administrator or designee.

## B

O'Laughlin and Little sued the County, alleging that—as ap-
plied to them—the Social Media Policy unconstitutionally re-
stricted their free-speech and free-association rights under both the
First Amendment to the United States Constitution and Article I,
§ 4 of the Florida Constitution, and that the Policy is unconstitu-
tionally overbroad and vague on its face.[1]  They sought an injunc-
tion prohibiting the Fire Department from enforcing the Policy and
a declaration ordering it to rescind the written warnings that they
had received for violating it.

The County filed a motion to dismiss, which the district
court granted in part, holding that plaintiffs failed to sufficiently al-
lege either (1) that the County violated their right to free speech,
because their online comments weren't related to a "matter of

---

[1] Plaintiffs also initially asserted that the Social Media Policy constituted a prior
restraint on speech, but have conceded on appeal that the district court "cor-
rectly held" that it is not.  Br. of Appellants at 12.

public concern," or (2) that the County violated their right to free association, because they didn't allege any associational conduct that the County had inhibited. The district court denied the County's motion to dismiss plaintiffs' facial claims that the Policy is unconstitutionally overbroad and vague, concluding that the Policy arguably regulates employees' right to speak on matters of public concern in a way that could prohibit most speech critical of the Fire Department.

The parties filed dueling motions for summary judgment on the overbreadth and vagueness claims. With respect to the overbreadth challenge, the district court held that "the impact of the proscriptions in the Social Media Policy is outweighed by the Fire Department's interest in [a] functioning and orderly department capable of effectively serving the public." And with respect to vagueness, the court concluded that "the policy is sufficiently clear that a reasonable person could foresee the conduct which would put him at risk of discharge or other discipline."

O'Laughlin and Little timely appealed to this Court. Before us, they argue that the district erred in rejecting their (1) as-applied free-speech claim, (2) as-applied free-association claim, (3) facial overbreadth claim, and (4) facial vagueness claim.[2]

---

[2] "We review a district court's dismissal of a complaint for failure to state a claim upon which relief may be granted de novo." *Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012). We also review a district court's grant of

## II

## A

Plaintiffs' primary contention is that their free-speech rights were violated when they were disciplined for their Facebook posts. Although it's well-settled that a public employee may not be discharged or punished in retaliation for exercising her right to free speech under the First Amendment, it's also well-settled that a public employee's free-speech rights are not absolute. *See Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).

In *Pickering v. Board of Education*—the pathmarking case governing public employees' free-speech rights—the Supreme Court held that a public employee's interest in exercising her freedom of speech must be weighed against the government's need to "promot[e] the efficiency of the public services it performs through its employees." 391 U.S. 563, 568 (1968). Then, 15 years later in *Connick v. Myers*, the Court explained that "[t]he repeated emphasis in *Pickering* on the right of a public employee 'as a citizen, in commenting upon matters of public concern,' was not accidental," and, therefore, it is essential to a public employee's free-speech claim that her speech relate to a matter of public concern. 461 U.S. 138, 143 (1983).

---

summary judgment de novo, applying the same legal standard used by the district court. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).

Drawing on *Pickering* and *Connick*, we have developed the following four-step "balancing test":

> To prevail under this analysis, an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. If an employee satisfies her burden on the first three steps, the burden then shifts to the employer [4] to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech.

*Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005) (internal citations omitted).

To determine whether a public employee's speech addresses a matter of public concern at step one of the four-factor *Pickering-Connick* test, a reviewing court must examine three sub-factors—namely, the "content, form, and context" of the employee's statement. *Connick*, 461 U.S. at 147–48.

The district court here held that plaintiffs' Facebook posts did not address a matter of public concern and ended its free-speech analysis there. In so holding, the court emphasized (1) that "the content of the speech addressed the potential misuse of a Union Time Pool," not the "misuse of public dollars or the Fire

Department's budgeting priorities"; (2) that the speech was not "communicated to a [sic] public at large" but, rather, was "made in the form of posts and a comment in a private Facebook group"; and (3) that the "context" suggested that plaintiffs "were motivated to speak by personal interests in electing . . . O'Laughlin to a union leadership position."

We disagree with the district court's reasoning with respect to each of the public-concern sub-factors and, thus, with its overall conclusion that plaintiffs' speech didn't address a matter of public concern.

First, *content*, which we have said is "undoubtedly the most important factor in assessing whether particular speech touches on a matter of public concern." *Mitchell v. Hillsborough Cnty.*, 468 F.3d 1276, 1284 (11th Cir. 2006). With respect to the content sub-factor, there is no requirement in a case like this, as the district court seemed to assume, that the speech allege a "misuse of public dollars." Rather, following the Supreme Court's lead, we have held, more generally, that "[i]n assessing the content of a public employee's speech, we look to whether the speech communicates a 'subject of legitimate news interest[,] a subject of general interest and of value and concern to the public at the time.'" *Id.* (quoting *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004)). Here, O'Laughlin alleged—and Little seemed to second—(1) that Newsome had at-tempted to misuse member-donated paid-time-off for his own per-sonal benefit and (2) that Fire Department management was com-plicit in Newsome's wrongdoing. Put simply, plaintiffs' speech was

intended to expose what they perceived to be corruption within the union and the Department. That strikes us as sufficiently "a subject of legitimate news interest" to satisfy the public-concern requirement's content sub-factor. Indeed, we have emphasized that "a core concern of the [F]irst [A]mendment is the protection of the 'whistle-blower' attempting to expose government corruption." *Bryson*, 888 F.2d at 1566; *see also Porter v. Califano*, 592 F.2d 770, 785 (5th Cir. 1979) ("[I]t is unthinkable that a public employee who attempts to expose corruption in her office should be punished . . . .").[3]

The district court likewise erred with respect to the public-concern requirement's *form* sub-factor. Contrary to that court's apparent assumption, the law is well-settled that a public employee does not forfeit his free-speech rights simply because he chooses to communicate privately rather than publicly. The Supreme Court's post-*Pickering* decision in *Givhan* makes that much crystal clear. In that case, a public-school teacher engaged in a series of private communications with her principal complaining about employment policies and practices that she deemed racially

---

[3] It's worth noting that this case is different from *Mitchell* in an important respect. There, the panel held that the employee's speech was "comprised solely of sophomoric name-calling and contempt-communicating expressive acts"—it was an unadorned "*ad hominem* attack[]"—and was "unaccompanied by any content touching an issue of public concern." 468 F.3d at 1285. Here, both O'Laughlin and Little used some salty language—or acronyms, as the case may be—but they did so in service (however crude) of a point about Newsome's fitness for union office.

discriminatory. *See Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 412–13 (1979). This Court's predecessor, the old Fifth Circuit, reversed a judgment in the teacher's favor on the ground that because she "had privately expressed her complaints and opinions to the principal, her expression was not protected under the First Amendment." *Id.* at 413. The Supreme Court unanimously reversed, expressly rejecting the proposition that "private expression of one's views is beyond constitutional protection." *Id.* While *Pickering* and other cases like it "each arose in the context of a public employee's public expression," that fact, the *Givhan* Court clarified, was "largely coincidental." *Id.* at 414. No decision, the Court emphasized, "support[s] the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly." *Id.* Since *Givhan*, our own decisions have underscored the same theme. *See, e.g.*, *Cook*, 414 F.3d at 1319 (citing *Givhan* and holding that "[t]he mere fact that [a public employee's] speech was made to coworkers or to supervisors rather than directed at the general public does not remove the speech from the category of public concern"); *Kurtz v. Vickry*, 855 F.2d 723, 727–30 (11th Cir. 1988) (citing *Givhan* and holding that privately communicated speech sufficiently addressed a matter of public concern).

Finally, *context*. Plaintiffs here aired their grievances in the run-up to a union election, and they used an online platform to pointedly criticize union leadership. We have observed that "[i]ssues regarding the operation of government, including issues

of union organization, are often considered matters of public con-cern." *Cook*, 414 F.3d at 1319.   And contrary to the district court's suggestion, the fact that plaintiffs' speech here occurred in the con-text of a union election hardly changes matters.   While we don't doubt the district court's factual premise that plaintiffs' speech was at least to some degree "motivated" by their personal interest in the outcome of the union election, we reject its conclusion that their election-related motivation deprives their speech of its public-ness.  Presumably, in any campaign setting, a candidate and his sup-porters will have a selfish purpose for speaking, including about ri-val candidates—namely, winning the election.  But far from under-mining their speech's claim to First Amendment protection, that purpose at least arguably strengthens it.  *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346–47 (1995) (citing numerous decisions in support of the proposition that campaign-related speech exists at the very core of the First Amendment).[4]

Because we conclude that the district court erred in conclud-ing that plaintiffs' speech didn't address a matter of public concern

---

[4] This is not a case like *Morris v. Crow*, 117 F.3d 449 (11th Cir. 1997), in which we tentatively suggested—in dicta—that a public employee's "vituperative outburst" uttered at a polling place might not have related to a matter of pub-lic concern.   There, we emphasized (1) that the employee was motivated solely by "her anger that [one of two candidates for sheriff] had fired her hus-band" and (2) that there was "no evidence that [her] speech at the polling place included any commentary on the relative qualifications of the candidates." *Id.* at 457.  Here, by contrast, the very point of plaintiffs' speech was to comment on Newsome's fitness to serve in union leadership.

at step one of the four-part *Pickering-Connick* balancing test, we vacate that court's rejection of plaintiffs' free-speech claim and remand for it to conduct the remainder of the *Pickering–Connick* analysis in the first instance.

**B**

O'Laughlin and Little separately allege that—as-applied to them—the Social Media Policy unconstitutionally restricted their right to free association.

Although both parties refer in their briefs to the First Amendment's "Free Association Clause," the Constitution does not by its terms protect the freedom of association. Rather, association has been characterized as a right "implicit" in the First Amendment. There are two types of constitutionally protected association—intimate and expressive. Here, we deal with the right to expressive association, which the Supreme Court initially recognized in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958). There, the Court held that "freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Id.* at 460.

In *Roberts v. U.S. Jaycees*, the Supreme Court explained that the freedom of expressive association is instrumental to, and protective of, *other* constitutional rights: "[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment." 468 U.S. 609, 618 (1984).

"The Constitution guarantees freedom of association of this kind," the Court continued, "as an indispensable means of preserving other individual liberties." *Id.* We have specifically held that "[t]his right to freedom of association extends to public employees being able to engage in associative activity without retaliation." *Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb Cnty.*, 809 F.2d 1546, 1558 (11th Cir. 1987).

The district court here held that plaintiffs failed to allege any "associational conduct upon which the [County] ha[d] infringed," and we agree. The Supreme Court has described the freedom of association as "the exercise of one's right to choose one's associates." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 548 (1987) (quotation omitted). O'Laughlin and Little simply weren't denied that right. Plaintiffs complain that they were unfairly disciplined for their social-media posts—that is, for their speech—*not* that they were punished for joining the union, collectively bargaining, or otherwise hanging around with people who share their beliefs. At its core, this is a speech case, not an association case. *See* Oral Argument at 8:08 *et seq.*

Accordingly, we affirm the district court's dismissal of plaintiffs' as-applied free-association claim.

## C

Next up: Plaintiffs contend that—on its face—the Fire Department's Social Media Policy is unconstitutionally overbroad. The policy is indisputably broad: It prohibits "content that could

be reasonably interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public."

In determining whether a public employer's policy that prospectively restricts speech is unconstitutionally overbroad, courts apply a modified version of the *Pickering-Connick* test. That test places a heavy burden on the government to "show that the interests of [the] potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's necessary impact on the actual operation of the Government." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 468 (1995) (quotation marks omitted).

The district court here acknowledged that, on its face, the Social Media Policy covers speech that could address matters of public concern. It ultimately concluded, however, that "the Fire Department's interests"—in summary, in identifying prohibited social-media-related conduct and providing related guidance; maintaining order, discipline, and camaraderie; and ensuring firefighters' ability to serve the community—"outweigh[ed] potential employee and audience interests in the speech the Social Media Policy proscribes."

We disagree. The Fourth Circuit's decision in *Liverman v. City of Petersburg*, 844 F.3d 400 (4th Cir. 2016), is instructive. The court there considered a police department's social-media policy that prohibited "[n]egative comments on the internal operations of the Bureau, or specific conduct of supervisors or peers that impacts

the public's perception of the department"—and, even more broadly, the dissemination of any information "that would tend to discredit or reflect unfavorably upon" the department. *Id.* at 404. In a suit brought by two veteran officers who had engaged in a Facebook conversation about the pitfalls of "rookie cops becoming instructors," the Fourth Circuit invalidated that policy as "unconstitutionally overbroad." *Id.* at 407. In particular, the court concluded that there could be "no doubt" that the policy prohibited protected speech, inasmuch as it "prevent[ed] plaintiffs and any other officer from making unfavorable comments on the operations and policies of the Department, arguably the 'paradigmatic' matter of public concern." *Id.* at 407–08 (quoting *Sanjour v. EPA*, 56 F.3d 85, 91 (D.C. Cir. 1995)). And, more to the point for present purposes, the Fourth Circuit emphasized the "astonishing breadth" of the policy, which "proscribe[d] '[n]egative comments on the internal operations of the Bureau'—which could be just about anything—or on the 'specific conduct of supervisors or peers'—which, again, could be just about anything." *Id.* at 408.

The Social Media Policy here suffers from the same sort of "astonishing breadth." It expressly prohibits "disseminating content" that "could be reasonably interpreted as having an adverse effect upon Fire Rescue morale, discipline, operations, the safety of staff, or perception of the public." In the *Liverman* court's words, that "could be just about anything." The district court here reasoned that the Social Media Policy's "For example" clause—which is found in Subsection (d) and catalogues a non-exhaustive list of

topics that might trigger the prohibition—sufficiently narrowed the provision's reach. But here, as in *Liverman*, "the milder language in a single provision does not salvage the unacceptable overbreadth of the social networking policy taken as a whole." 844 F.3d at 409.

Accordingly, we vacate the district court's summary judgment on plaintiffs' overbreadth claim and remand for further proceedings consistent with this opinion.

## D

Finally, vagueness. "In the public employment context, the Supreme Court has reiterated that the vagueness doctrine is based on fair notice that certain conduct puts persons at risk of discharge." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (citing *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974)). "Such standards are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." *Id.*

The district court here concluded that the Social Media Policy "is sufficiently clear that a reasonable person could foresee the conduct which would put him at risk of discharge or other discipline." We hold that plaintiffs have failed to properly present a vagueness challenge on appeal. Although plaintiffs use the term "vagueness" once in the argument section of their opening brief, the portion of the brief in which that word appears is, in fact, devoted to contesting the policy's *overbreadth*. *See* Br. of Appellant

at 34–39 (focusing, in particular, on *Liverman*, which, as already explained, found a similar social-media policy unconstitutionally overbroad). Accordingly, plaintiffs have abandoned any vagueness argument that they might have intended to present. *See, e.g.*, *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (holding that "[a] party fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it, 'for instance by devoting a discrete section of his argument to [it]'" (citations omitted)).

We affirm the district court's judgment rejecting plaintiffs' facial vagueness claim.

## III

For the foregoing reasons, we affirm the district court's judgment as to the free-association and vagueness claims but vacate and remand as to the free-speech and overbreadth claims.

**AFFIRMED** in part, and **VACATED** and **REMANDED** in part.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 01, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  20-14676-BB
Case Style:  AJ O'Laughlin, et al v. Palm Beach County
District Court Docket No:  9:19-cv-80701-WPD

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>each party to bear own costs</u>.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call <u>Tonya L. Richardson, BB</u> at <u>(404) 335-6174</u>.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion

# ATTACHMENT 2

**Unsworn Declaration of William R. Amlong, Esquire,
Pursuant to 42 U.S.C. § 1746, Supporting
Appellants' Motion for Attorneys' Fees on Appeal**

State of Florida

County of Broward

WILLIAM R. AMLONG, Esquire, deposes and says:

1.     I am one of the two lead counsels in this action.  I make this

declaration of my own personal knowledge.

2.     My relevant professional background is as follows:

**Education**

Miami-Dade Junior College (1963-1965)

University of North Carolina at Chapel Hill (1965-1968)

      Bachelor of Arts/Journalism

Nova University Center for the Study of Law (1982-1985)

      Juris Doctor/Cum Laude

**Bar Admissions**

Supreme Court of Florida                              May 20, 1985

United States District Courts

Southern District of Florida

| | |
|---|---|
| General Bar | July 29, 1985 |
| Trial Bar | March 11, 1986 |
| Middle District of Florida | April 28, 1988 |
| Northern District of Florida | December 16, 1992 |
| United States Court of Appeals/11th Circuit | July 29, 1986 |
| Supreme Court of the United States | November 14, 1988 |

**Employment**

l am a shareholder in the six-lawyer litigation firm of Amlong & Amlong, P.A., d/b/a The Amlong Firm. The other shareholder is my wife, Karen Coolman Amlong, Attorney at Law.

**Areas of Practice and Experience**

3.      My practice is primarily civil litigation, most of it in the areas of labor-and-employment and other business matters.

During the past 37 years that I have been admitted to The Florida Bar, I have tried to verdict (or decision) approximately 200 cases in either United States district courts or state courts of general jurisdiction.  I additionally have litigated, but settled prior to trial, a substantially greater number of cases.

I have lectured at Continuing Legal Education seminars on employment law and trial practice, on both the state and national level, and was on the faculty (from the inception, and in 1997 as one of two team leaders) of each of the intensive trial-advocacy programs sponsored by the Labor and Employment Law Section, the University of Miami Law School and Stetson University College of Law.  I authored an article published in the August 2008 issue of the American Association for Justice's *Trial* magazine, "Representing the age discrimination plaintiff," and book chapters on "Closing Argument and Jury Instructions: Plaintiff's Perspective," in Litigating the Workplace Harassment Case (ABA 2010), and "The Glass Ceiling: 'Sexual' Harassment as a Method of Keeping the Lid Glued Down," in Sexual Harassment in the Public Workplace (ABA 2001).

I am a member of the American Bar Association and the American Association for Justice.  I served four three-year terms on the Executive Board of the National Employment Lawyers Association, of the Florida affiliate of which I was president in 1995-1997; I remain a member of both the national and state organizations.  I am AV-rated by Martindale-Hubbell and for the past several years have been a Superlawyer and a Best Lawyer in America.

**My firm's fee structure and previous fee awards**

4.    My current billing rate (and that of my wife/law partner) is $650-per-hour, which was effective January 1, 2021.  The prior rates were $600-per-hour, which was effective January 1, 2017 (except for the lower Juris Doctor rate of $325 used for me during the period of a 91-day suspension by the Florida Supreme Court (between March 8, 2021 through December 2, 2021); $550-an-hour, which was effective January 1, 2015; $500-an-hour, effective January 1, 2009; $450-an-hour, effective January 1, 2007; $400-an-hour, effective March 17; $350-an-hour, effective in July 2000, and before that, from May 1996, $300.  Those are the rates that I and my wife/law partner charge all non-contingent clients, which non-contingent work currently makes up the bulk of our practice and constitutes the majority of our firm's income.

5.    Neither I nor my partner have accepted, since January 1, 2021, January 1, 2017; January 1, 2005; January 1, 2009; January 1, 2007; March 17, 2004; July 1, 2000, or mid-May 1996, any engagement at any rate below those enumerated above, other than in six in which I felt obligated to do so as an officer of the court.[1]

---

[1]These matters included work as a Special Counsel to the Florida Judicial
(continued...)

6.      Although hourly-billed clientele is something of an anomaly within a plaintiff's-side labor-and-employment law firm, this is effectuated in our practice through the representation of a number of health professionals, attorneys, financial professionals and named executive officers of various corporations.  Even in cases that we eventually decide to take on a contingency-fee basis, we generally begin with a $5,000 engagement fee, against which the client agrees that we shall bill, with no guarantee of a future contingency-fee arrangement, at $650-an-hour to evaluate the case.  These are the fees that we charge statewide.

7.      We seeking compensation for each shareholder at $600-an-hour for the appeal filed in December 2020. Those rates are commensurate with compensation that has been awarded in civil actions by judges in the Southern District of Florida to lawyers of similar experience and credentials within the past five years.  See Shipping & Transit, LLC v. 1A Auto, Inc., 283 F. Supp. 3d 1290, (S.D. Fla. 2017) (approving $830 hourly rate for 30-year-plus lawyer with extensive patent law experience); United States ex rel. Beaujon v. Plaza Health Network, Case No. 12-20951-Civ-Moreno, 2015 U.S. Dist. LEXIS 160479, *9-

_____

[1](...continued)
Qualifications Commission in three matters and in two criminal trial matters and one habeas matter for which I accepted appointment pursuant to the Criminal Justice Act.

*10 (S.D. Fla. Nov. 25, 2015) (given "the complicated nature of the case," $625-an-hour reasonable fee for partner with 20 years' experience in False Claims Act cases, and $450 for lawyer with 11 years experience); Wachovia Bank v. Tien, Case No. 04-cv-20834- Dimitrouleas, 2015 U.S. Dist. LEXIS 178340, *12-*14 (S.D. Fla. Sept. 29, 2015) ($485 for partner with 30 years experience, and $345 for lawyer with 12 years of experience appropriate in interpleader action involving civil theft allegations); Club Madonna, Inc. v. City of Miami Beach, Case No. 13-23762-civ-Lenard/ Goodman, 2015 U.S. Dist. LEXIS 126629, at *27-*28 (S.D. Fla. Sept. 22, 2015) ($548 held to be a reasonable hourly fee under 42 U.S.C. § 1988 for Richard Ovelman, Esq., a lawyer admitted in October 1979[2] (four months after Ms. Amlong), defending a frivolous § 1983 claim); Rubenstein v. Fla. Bar, 2015 U.S. Dist. LEXIS 41911, 6-7 (S.D. Fla. Mar. 31, 2015) ($550 reasonable for Washington, D.C.-based first-amendment specialist in challenge to Bar advertising restrictions, and $600 and $500 reasonable for two Miami-based lawyers, Kendall Coffey and Daniel Blonsky, who were admitted to the Florida Bar in, respectively,

---

[2]See www.floridabar.org/mybarprofile/284904, visited September 22, 2019.

1978[3] and 1993,[4] and <u>Denarii Sys., LLC v. Arab</u>, Case No.

12-24239-civ-O'Sullivan, 2015 U.S. Dist. LEXIS 7843, *5-*6 (S.D. Fla. Jan. 23,

2015) ($500-an-hour was reasonable for two lawyers, Adam S. Hall[5] and Andrew

C. Hall,[6] admitted, respectively, in 1997 and 1968, in a case in which the plaintiffs

sought damages and injunctive relief for violation of Florida's Uniform Trade

Secrets Act, the Computer Fraud and Abuse Act and the Stored Communications

Act). Although these cases were not employment matters, they were federal civil

litigation matters of comparable complexity to Captains O'Laughlin and Little's

First-Amendment case. <u>See</u> <u>Bartle v. RX Options, Inc.</u>, Case No.

08-60533-cv-Huck/O'Sullivan, at *9 (S.D. Fla. Mar. 19, 2009) (report and

recommendation "recognizing that William Amlong and Jennifer Daley are skilled

attorneys" and awarding $400 and $375 hourly rates in a wage-and-hour case

while noting that "discrimination and civil rights cases, ... involve more complex

litigation"); <u>Smith v. New Smyrna Beach</u>, Case No. 6:11-cv-01110-RBD-KRS,

DE 234, at *3-*6 (M.D. Fla. April 24, 2015), aff'd DE 235 (May 20, 2015)

---

[3]<u>See</u> www.floridabar.org/mybarprofile/259861, visited September 22, 2019.

[4]<u>See</u> www.floridabar.org/mybarprofile/972169, visited September 22, 2019.

[5]<u>See</u> www.floridabar.org/mybarprofile/109983, visited September 22, 2019.

[6]<u>See</u> www.floridabar.org/mybarprofile/111480, visited September 22, 2019.

(awarding Mr. and Ms. Amlong their 2014 rate of $500-an-hour for a sex-discrimination and retaliation case begun in 2008 on behalf of a female fire fighter/paramedic and tried in 2013); Kristen Anderson v. City of Fort Pierce, Case 2:14-cv-14095-JEM (S.D. Fla. March 12, 2018), DE 348 (awarding Mr. and Ms. Amlong fees based on a $500 hourly rate in  a sex-discrimination and retaliation claim that began in 2011 and was tried in August 2015).

8.    A Florida state court judge in Broward County, meanwhile, in 2020 awarded Mr. and Ms. Amlong fees at the rate of $600 per hour for work after December 31, 2016 and $400 for Ms. Daley. See Fritz v City of Pembroke Pines, 17th Jud. Cir. Case No. 11-003579 (13) appended as **Attachment A** (Order and Final Judgment on Plaintiff's Motion for Attorney's Fees and Costs).

9.    This firm's concentration in employment discrimination and civil rights law justifies its hourly fees.  This concentration allows us to "recycle" both knowledge and, indeed, even relevant portions of pleadings, briefs and legal memoranda.  This firm routinely demands (and gets) compensation from its clients for higher degrees of skill and more familiarity with the relevant issues through an hourly rate reflective of its specialization and attendant expertise, rather than charging a lower rate for the greater amount of time it would take non-specialists to perform the same task from scratch.

The lawyers for whom The Amlong Firm seeks compensation, their dates of admission to The Florida Bar, the rates at which The Amlong Firm is seeking compensation, the numbers of hours that the billed to this matter and the subtotal for each lawyer are as follows:

| Billed by | Role | Date of Admission | Hourly Rate | Total Hours Billed | Amount |
|---|---|---|---|---|---|
| WRA | Shareholder | 05/20/1985 | $600 | 13 | $600.00 |
| WRA91 | Juris Doctor (03/08/21 - 12/1/21) | | $325 | 27.5 | $8,937.50 |
| KCA | Shareholder | 6/14/1979 | $600 | 3.1 (after exclusions) | $1,860.00 |
| JED | Senior Associate | 9/19/1990 | $475 | 9.2 (after exclusions) | $4,370.00 |
| JED (JD91) | Juris Doctor (03/08/21 - 10/20/21 | | $300 | 17.8 | $5,250.00 |
| | | | TOTAL | 70.6 | $28,217.50 |

10.     Ms. Daley, a 30-year lawyer who began her career as a law clerk to the late Hon. E. Earle Zehmer, the chief judge of the First District Court of Appeal, and has concentrated in labor-and-employment since joining The Amlong Firm in 1998, is billed currently at $475.

How this firm tracks time and expenses

11.     All of our firm's billing since the time this action was begun was

done through the Juris® computer billing system.  Time records are generated either contemporaneously with the work being done (by the lawyer, for example, turning on a computer-resident "timeslip" when he or she receives a telephone call or begins working on a document) or, in such cases as court appearances, entering the time as soon as the lawyer returns to the office.  The timeslips are harvested periodically from the network, or in such cases as this, saved until the end of the case, and are combined into a billing worksheet.  The billing worksheet is returned to one of the two shareholders for editing and, in the use of sound billing judgment, exclusion of unwarranted time.

12.    Attachments B-C are incorporated by reference within this Unsworn Declaration and represent an accurate accounting of the time that personnel of this law firm have spent during the course of the appeal.

a.    Attachment B, entitled "Chronological Listing of All Billing Entries."  It was created by "dumping" the data stored in Juris into an Excel® spreadsheet, putting the relevant data into columns (date, timekeeper, activity, rate at which compensation is sought, portions or numbers of hours and amount), adding the rates at which compensation is sought, and the resulting amounts (after voluntary reductions).

b.    The data is sorted by timekeeper in Attachment C, "Billing Entries by Timekeeper," which is summarized supra, identifying each time keeper

by name and, if applicable, number of years admitted to The Florida Bar.

Attachment C also includes the Court's completed fees form for each timekeeper.

13.     Two matters concerning the various attachments warrant discussion:

a.     All entries of time incurred and tasks performed have been made personally by me, by my wife/law partner or by persons working under our supervision and control, and were made either contemporaneously with the event or as soon as possible after it.

b.     Based on my professional judgment, there exist no time entry for which plaintiff seeks payment that is, ***One***, excessive, ***Two***, redundant, or, ***Three***, unnecessary.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Fort Lauderdale, Florida, on May 6, 2022.

*/s/ William R. Amlong*
WILLIAM R. AMLONG

\\amlong3\cpshare\CPWin\HISTORY\220325_0001\1829.6C

IN THE CIRCUIT COURT OF THE SEVENTHTEENTH
JUDICIAL CIRCUIT IN AND FOR BROWAD COUNTY FLORDIA

Case Number: CACE 11-003579 (13)

KENNETH FRITZ,

    Plaintiff,

vs.

THE CITY OF PEMBROKE PINES,
et al,

    Defendants.

_____/

## ORDER and FINAL JUDGMENT
## ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

    **THIS CAUSE** having come on to be heard before the Court at an Evidentiary Hearing held on January 7, 2020, on Plaintiff's Motion for Attorneys' Fees and Plaintiff's Motion to Tax Costs, and the Court having reviewed the Defendant, City of Pembroke Pines' (City), Response to Plaintiff, Kenneth Fritz's, Motion for Attorneys' Fees and Motion to Tax Costs,[1] Plaintiff's Reply re: Defendant's Objections to Motion to Tax Costs filed August 14, 2017 and Plaintiff's Reply to Defendant's Objections to Plaintiff's Motion for Attorney's Fees filed August 21, 2017, Plaintiff-Appellant's Motion to Tax Appellate Costs filed April 14, 2019, Plaintiff-Appellant's Motion for Appellate Attorney's Fees, filed April 16, 2019, Plaintiff's Amended Notice of Filing Lists re: Reductions to Fees and Costs Sought in Motion For Appellate Attorneys' Fees and Costs filed December 17, 2019 and Plaintiff's Notice of Filing Plaintiff's Supplemental Time / Fees Listing with Adjustments for January 7, 2020 Hearing filed January 2, 2020, the Court file, the

---

[1]Plaintiff settled with defendant, The Board of Trustees of the City Pension Board of the City of Pembroke Pines (the "Board") prior to the January 7, 2020 hearing for a payment of $75,000, which payment plaintiff acknowledged should be credited against the fees plaintiff is seeking.

ATTACHMENT 2A

statutory and case law and evidence; the Court heard testimony from Plaintiff's lead counsel, Karen Coolman Amlong, and plaintiff's fee expert, G. Ware Cornell, Esquire. The City cross-examined the witnesses, but did not call its own expert witness in opposition to the fees and costs sought; heard and reviewed argument of counsel and being otherwise fully advised in the premises, the Court finds, determines and orders as follows:

## A.   **APPLICABLE LAW**

In its factual determinations, this Court has considered the factors set forth in

*Florida Patient's Compensation Fund v. Rowe,* 472 So,2d 1145 (Fla, 1985), as

modified by *Standard Guaranty Insurance Co. v. Quanstrom,* 555 So.2d 828

(Fla. 1990), which includes the Florida Bars' Code of Professional

Responsibility, all in relation to the evidence submitted in support of the

Horland's request for reasonable attorneys' fees. In *Rowe,* our Supreme Court

adopted the federal lodestar approach for determining a reasonable attorney's

fee. In so doing, the Florida Supreme Court recognized that while the amount

of a reasonable fee must be looked at under the facts in each case, there are

certain factors which must be considered *in every* case to arrive at a reasonable

attorney's fee.  See *Joyce vs Federated National Ins. Co.*, 228 So 3d 1122 (Fla.

2017).   The Court took into consideration the following factors as set forth in

Rule 4-1.5 of the Rules Regulating the Florida Bar.

## B.   **FACTORS TO BE CONSIDERED IN DETERMINING REASONABLE FEES AND COSTS**

Factors to be considered as guides in determining a reasonable fee include:

(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

Plaintiff's witnesses, attorney Karen Coolman Amlong and attorney G. Ware Cornell, Plaintiff's Fee Expert testified as to the *Rowe* factors.

## C.    **FINDINGS AND CONCLUSION**

1.    Plaintiff is a prevailing party as to the City under section 175.061(5), Florida Statutes.

2.     Plaintiff is entitled to recover for the time reasonably expended in defending against the claims against the City and the Board of Trustees of the City Pension Fund for Firefighters and Police Officers in the City of Pembroke Pines, which is as follows for the three phases of the litigation:

a.     July 29, 2016 through trial: 247.7 hours;

b.     the appeal: 109.8 hours; and c.

"everything else:" 40 hours.

3.     The reasonable hourly rates for plaintiff's attorneys are as follows:

a.     $550 per hour for Karen Coolman Amlong and William R Amlong from July 29, 2016 through December 31, 2016 and $600 per hour thereafter;

b.     $400 per hour for senior associate Jennifer Daley from July 29, 2016 throughout the remainder of the litigation;

c.     $200 per hour for junior associates from July 29, 2016 throughout the remainder of the litigation; and

d.     $150 per hour for paralegals from July 29, 2016 throughout the remainder of the litigation.

4.     The $75,000 received from the Pension Board should be deducted from the lodestar due under the contingency fee agreement.

5.     The court finds and concludes that a reasonable lodestar in this matter is $175,000. After deduction of the payments by the Pension Board, the remaining reasonable attorney's fees due plaintiff are $100,000 and plaintiff is entitled to a judgment against the City in this amount.

6.    Additionally, plaintiff is entitled to judgment against the City for fifty percent of his costs in the amount of $6,808, plus the entire $7,200 fee charged by Mr. Cornell, plaintiff's fee expert, to appear and testify at the January 7, 2019 hearing.

7    The parties agree that this case does not qualify for a multiplier.

8.    The Court awards 100% of the costs incurred, with the exception of Mr. Cornell's fee, but apportions them ½ to the City and ½ to the Pension Board. The Court awards 100% of Mr. Cornell's fee against the City because the Pension Board settled with plaintiff prior to the hearing on fees and costs.

Accordingly, it is

**ORDERED and ADJUDGED** that (1) Plaintiff's motions are **GRANTED**. (2) Plaintiff, Kenneth Fritz, shall have and recover against defendant, City of Pembroke Pines, judgment for $114,008, together with interest at the statutory rate from the date of entry of this judgment.

**DONE and ORDERED** in chambers in Broward County, Florida this 12th day of August, 2020.

Michael A. Robinson
Circuit Court Judge

MICHAEL A. ROBINSON
Circuit Court Judge

AUG 1 2 2020

TRUE COPY

cc:    Copies to all parties of record

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| JED | (Appeal) Prepare court papers: notice of appeal | $475 | 0.3 | $142.50 | |
| SLL | Receive and review conformed copies of Notice of Appeal and Receipt for filing the same; save documents to server; e-mail copies to attorneys and clients. | $125 | 0 | $0.00 | |
| SLL | Receive and review conformed copies of Transcript Information Form, Appellants' Certificate of Interested Person and Corporate Disclosure, Civil Appeal Statement and Appearance of Counsel Forms (2); save same to server; e-mail copies to attorneys and clie [Reduced from .5 to 0] | $125 | 0 | $0.00 | $    (62.50) |
| SLL | Receive and review copy of Court's Notice of Telephone Mediation, set for Monday, February 8, 2021, 2:30 p.m., EST; save same to server; calendar Mediation and deadline date for attorneys to submit Confidential Mediation Statement with reminder; e-mail co [Reduced from .4 to 0] | $125 | 0 | $0.00 | $    (50.00) |
| JED | Receive and review court papers: mediation notice | $475 | 0.1 | $47.50 | |
| JED | Receive and review e-mail from opposing counsel re: appellee's position re: extension for the initial brief | $475 | 0.1 | $47.50 | |
| SLL | Receive and review conformed a copy of Appellants' Unopposed Motion for Extension of Time to File the Initial Brief; save same to server; e-mail copy to attorneys and client; re calendar deadline to submit Initial Brief [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |

ATTACHMENT 2B

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| SLL | Receive and review Court's Order on Appellant's Motion for Extension of Time to File Brief; save same to server; update calendar reminder; e-mail copy to attorneys [Reduced from .3 to 0] | $125 | 0 | $0.00 | $   (37.50) |
| JED | Mediation: Prepare correspondence to the mediator re: mediation summary | $475 | 2.2 | $1,045.00 | |
| SLL | Receive and review copy of Order permitting WRA to appear pro hac vice; save same to server; calendar deadline for payment of $50 pro hac vice fee; e-mail copy of Order to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | $   (37.50) |
| WRA | Receive and review correspondence from opposing counsel re: dispensing with appellate mediation on the basis of its being fruitless; respond in agreement | $600 | 0.1 | $60.00 | |
| WRA | Receive and review correspondence from opposing counsel re: disclosure about who would be attending mediation. forward to YPH for reciprocity | $600 | 0.1 | $60.00 | |
| WRA | Mediation: appellate mediation conference; mediation is cancelled | $600 | 0.2 | $120.00 | |
| SLL | Receive and review conformed copies of Appellant's Unopposed Motion for Enlargement of Time to File Appellant's Brief and Appellee's Certificate of Interested Persons; save same to server; e-mail copies to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | $   (37.50) |
| SLL | Receive and review copy of Court's Order re Appellant's | $125 | 0 | $0.00 | $   (37.50) |

# Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| | Motion for Extension for filing Appellant's Brief; update calendar deadline; save same to server; e-mail copy to attorneys and client [Reduced from .3 to 0] | | | | |
| SLL | Receive and review court Order re Pro Hac Vice status of attorney; save same to server; e-mail copy to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |
| KCA | Entry unrelated to the appeal | $600 | 0 | $0.00 | $    (240.00) |
| ALB | Entry unrelated to the appeal | $125 | 0 | $0.00 | $    (125.00) |
| KCA | Entry unrelated to the appeal | $600 | 0 | $0.00 | $    (60.00) |
| KCA | Entry unrelated to the appeal | $600 | 0.1 | $60.00 | |
| JED91 | Prepare court papers: draft for KCA's review motion for additional extension re: initial brief | $300 | 0.7 | $210.00 | |
| JED91 | Review e-mail from opposing counsel re: position on the extension re: the initial brief | $300 | 0.1 | $30.00 | |
| KCA | Review and revise motion for extension of time by 14 days | $600 | 0.1 | $60.00 | |
| SLL | Receive and review conformed copy of Appellants' Unopposed Motion to Enlarge Time to File Initial Brief; update calendar due date for Brief and Appendix; e-mail copy to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |
| SLL | Receive and review conformed copy of Court's Order granting Appellants' Unopposed Motion to Enlarge Time to File the Initial Brief; check calendar deadlines; e-mail copy of Order to attorneys and client | $125 | 0 | $0.00 | $    (37.50) |

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| | [Reduced from .3 to 0] | | | | |
| JED91 | Receive and review court papers: order on the motion for extension | $300 | 0.1 | $30.00 | |
| WRA91 | Prepare court papers: work on initial brief | $325 | 6.1 | $1,982.50 | |
| WRA91 | Prepare court papers: work on initial brief | $325 | 8.8 | $2,860.00 | |
| JED91 | Prepare court papers: assist with preparing portions of the brief | $300 | 4 | $1,200.00 | |
| JED91 | Assist with research and follow up re: protected activity issue and some of the citations; receive and respond to e-mails from WRA | $300 | 3.4 | $1,020.00 | |
| JED91 | Prepare court papers: begin to prepare the appendix to the initial brief | $300 | 1.1 | $330.00 | |
| KCA | Review and approve for filing initial brief of appellants | $600 | 1.1 | $660.00 | |
| JED91 | Prepare court papers: draft second amended certificate of interested persons | $300 | 0.1 | $30.00 | |
| JED91 | Prepare court papers: draft amended certificate of interested persons | $300 | 0.3 | $90.00 | |
| JED91 | No charge: review and respond to e-mails from YPH/KCA re: certificate of interested persons, clerk's notice, and follow up | $0 | 0.3 | $0.00 | |
| JED91 | Receive and review court papers: certificate of readiness re: record on appeal | $300 | 0.1 | $30.00 | |
| JED91 | Prepare court papers:  continue to work on the appendix; review some of the pleadings while doings so | $300 | 3.4 | $1,020.00 | |
| KCA | Review appendix to initial brief; spot check links and documents | $600 | 0.2 | $120.00 | |

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| WRA91 | Prepare court papers: reply brief | $325 | 3.5 | $1,137.50 | |
| WRA91 | Prepare court papers: continue working on the reply brief | $325 | 4.1 | $1,332.50 | |
| WRA91 | Prepare court papers: continue working on the reply brief | $325 | 5 | $1,625.00 | |
| JED91 | Phone conferences with KCA re: instructions re: the reply brief, and follow up | $300 | 0.2 | $60.00 | |
| JED91 | Review and respond to e-mails from KCA re: revisions re: the reply brief, and follow up | $300 | 0.3 | $90.00 | |
| JED91 | Receive and review court papers: answer brief | $300 | 0.3 | $90.00 | |
| JED91 | Prepare court papers: assist with portions of the draft reply brief | $300 | 3.4 | $1,020.00 | |
| KCA | Review and revise reply brief; approve for filing | $600 | 1.1 | $660.00 | |
| KCA | Review answer brief | $600 | 0.5 | $300.00 | |
| JED | Receive and review court papers: oral argument notice | $475 | 0.1 | $47.50 | |
| WRA | Receive and review court papers: 11th Circuits determination that oral argument is necessary to decide case; requesting additional copies of briefs | $600 | 0.1 | $60.00 | |
| WRA | Pre-argument preparation: | $600 | 4.3 | $2,580.00 | |
| JED | Prepare court papers: appellants' notice of supplemental authority; conduct research and review some of the pleadings while doing so | $475 | 0.8 | $380.00 | |
| JED | Receive and review court papers: appellee's notice of supplemental authority | $475 | 0.2 | $95.00 | |
| JED | Conference with WRA re: preparation for oral argument, | $475 | 0.3 | $142.50 | |

# Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| | assistance and follow up | | | | |
| WRA | Court appearance: prepare for and attend oral argument before 11th Circuit Court of Appeals | $600 | 5.8 | $3,480.00 | |
| WRA | Receive and review court papers: opinion reversing trial court's summary judgment phone conference with clients (.3) | $600 | 0.7 | $420.00 | |
| WRA | Phone conference with clients re: opinion | $600 | 0.3 | $180.00 | |
| JED | Receive and review court papers:  Mandate | $475 | 0.3 | $142.50 | |
| JED | Prepare court papers: begin to prepare the fees motion and related fees spreadsheet | $475 | 4.8 | $2,280.00 | |
| JED | No charge: Preparation of electronic mail correspondence to WRA re: follow up and additional information needed to complete the fees motion and spreadsheets (reduce from .2 to 0] | $475 | 0 | $0.00 | $    (95.00) |
| WRA | Prepare court papers:  review, edit JED's fee-motion conferral draft for appeal | $600 | 1.4 | $840.00 | |
| | **Total** | | **70.6** | **$28,217.50** | **$    (932.50)** |

# Billing Entries by Timekeeper

| Date | Time-keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/17/21 | ALB | Entry unrelated to the appeal | $125 | 0 | $0.00 | | | | | | 0.00 | $(125.00) |
| | ALB Total | | | 0 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $(125.00) |
| 11/17/20 | JED | (Appeal) Prepare court papers: notice of appeal | $475 | 0.3 | $142.50 | | | | | | 0.30 | |
| 01/04/21 | JED | Receive and review court papers: mediation notice | $475 | 0.1 | $47.50 | | 0.10 | | | | | |
| 01/12/21 | JED | Receive and review e-mail from opposing counsel re: appellee's position re: extension for the initial brief | $475 | 0.1 | $47.50 | | 0.10 | | | | | |
| 01/26/21 | JED | Mediation: Prepare correspondence to the mediator re: mediation summary | $475 | 2.2 | $1,045.00 | | | | | | 2.2 | |
| 11/05/21 | JED | Receive and review court summary | $475 | 0.1 | $47.50 | | 0.1 | | | | | |

ATTACHMENT 2C

| Date | Time-Keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/10/22 | JED | Prepare court papers: appellants' notice of supplemental authority; conduct research and review some of the pleadings while doing so | $475 | 0.8 | $380.00 | | | | | 0.8 | | |
| 02/10/22 | JED | Receive and review court papers: appellee's notice of supplemental authority | $475 | 0.2 | $95.00 | | 0.2 | | | | | |
| 02/10/22 | JED | Conference with WRA re: preparation for oral argument, assistance and follow up | $475 | 0.3 | $142.50 | | | | | 0.3 | | |
| 05/02/22 | JED | Receive and review court papers: Mandate | $475 | 0.3 | $142.50 | 0.3 | | | | | | |
| | | papers: oral argument notice | | | | | | | | | | |

# Billing Entries by Timekeeper

USCA11 Case: 20-14676    Document: 52    Date Filed: 05/06/2022    Page: 55 of 90

| Date | Time-Keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/04/22 | JED | Prepare court papers: begin to prepare the fees motion and related fees spreadsheet | $475 | 4.8 | $2,280.00 | | | | | | 4.80 | |
| 05/04/22 | JED | No charge: Preparation of electronic mail correspondence to WRA re: follow up and additional information needed to complete the fees motion and spreadsheets (reduce from .2 to 0] | $475 | 0 | $0.00 | | | | | | 0.00 | $ (95.00) |
| **JED Total** | | | | **9.2** | **$4,370.00** | **0.3** | **0.50** | **0.00** | **0.00** | **1.10** | **7.30** | **$ (95.00)** |
| 03/19/21 | JED91 | Prepare court papers: draft for KCA's review motion for additional extension re: initial brief | $300 | 0.7 | $210.00 | | | | | | 0.7 | |

# Billing Entries by Timekeeper

| Date | Time-keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|------|-------------|-------------|------|-------|--------|------------------------|-------------------------------|----------------|---------------|------------------------------------------|-------|-------------|
| 03/19/21 | JED91 | Review e-mail from opposing counsel re: position on the extension re: the initial brief | $300 | 0.1 | $30.00 | | | | | | | |
| 03/24/21 | JED91 | Receive and review court papers: order on the motion for extension | $300 | 0.1 | $30.00 | | 0.10 | | | | | |
| 04/05/21 | JED91 | Prepare court papers: assist with preparing portions of the brief | $300 | 4 | $1,200.00 | | | | 4 | | | |
| 04/05/21 | JED91 | Assist with research and follow up re: protected activity issue and some of the citations; receive and respond to e-mails from WRA | $300 | 3.4 | $1,020.00 | | | 3.4 | | | | |
| 04/05/21 | JED91 | Prepare court papers: begin to prepare the appendix to the | $300 | 1.1 | $330.00 | | | | | | 1.1 | |

# Billing Entries by Timekeeper

| Date | Time-Keeper | Description | Rate | Hours | Amount | Intervws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjustment |
|------|-------------|-------------|------|-------|--------|---------------------|-------------------------------|----------------|---------------|------------------------------------------|-------|------------|
| 04/06/21 | JED91 | Prepare court papers: draft second amended certificate of interested persons | $300 | 0.1 | $30.00 | | | | | | 0.1 | |
| 04/06/21 | JED91 | Prepare court papers: draft amended certificate of interested persons | $300 | 0.3 | $90.00 | | | | | | 0.3 | |
| 04/06/21 | JED91 | No charge: review and respond to e-mails from YPH/KCA re: certificate of interested persons, clerk's notice, and follow up | $0 | 0.3 | $0.00 | | 0.30 | | | | | |
| 04/09/21 | JED91 | Receive and review court papers: certificate of readiness re: initial brief | $300 | 0.1 | $30.00 | | 0.10 | | | | | |

| Date | Time-keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|------|-------------|-------------|------|-------|--------|------------------------|-------------------------------|----------------|---------------|-----------------------------------------|-------|-------------|
| 04/09/21 | JED91 | record on appeal | | | | | | | | | | |
| 04/09/21 | JED91 | Prepare court papers: continue to work on the appendix; review some of the pleadings while doings so | $300 | 3.4 | $1,020.00 | | | | | | 3.4 | |
| 07/13/21 | JED91 | Phone conferences with KCA re: instructions re: the reply brief, and follow up | $300 | 0.2 | $60.00 | 0.2 | | | | | | |
| 07/13/21 | JED91 | Review and respond to e-mails from KCA re: revisions re: the reply brief, and follow up | $300 | 0.3 | $90.00 | | 0.30 | | | | | |
| 07/13/21 | JED91 | Receive and review court papers: answer brief | $300 | 0.3 | $90.00 | | 0.30 | | | | | |
| 07/13/21 | JED91 | Prepare court papers: assist with portions of | $300 | 3.4 | $1,020.00 | | | | 3.4 | | | |

Billing Entries by Timekeeper

| Date | Time-keeper | Description | Rate | Hours | Amount | Interviews and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/15/21 | KCA | the draft reply brief | $600 | 0 | $0.00 | | | | | | | |
| 03/17/21 | KCA | Entry unrelated to the appeal | $600 | 0 | $0.00 | | 0.00 | | | | 0.00 | $ (60.00) |
| 03/18/21 | KCA | Entry unrelated to the appeal | $600 | 0.1 | $60.00 | | 0.10 | | | | | |
| 03/20/21 | KCA | Review and revise motion for extension of time by 14 days | $600 | 0.1 | $60.00 | | | | | | 0.1 | |
| 04/05/21 | KCA | Review and approve for filing initial brief of appellants | $600 | 1.1 | $660.00 | | 1.10 | | | | | $ (240.00) |
| 04/11/21 | KCA | Review appendix to initial brief; spot check links and documents | $600 | 0.2 | $120.00 | | 0.20 | | | | | |
| 07/13/21 | KCA | Review and revise reply brief; approve for filing | $600 | 1.1 | $660.00 | | | | | | 1.1 | |
| 07/13/21 | KCA | Review answer brief | $600 | 0.5 | $300.00 | | 0.50 | | | | | |
| | **JED91 Total** | | | **17.8** | **$5,250.00** | **0.20** | **1.20** | **3.40** | **7.4** | **0.00** | **5.60** | **$ -** |

USCA11 Case: 20-14618    Document: 52    Date Filed: 05/06/2022    Page: 59 of 90

Billing Entries by Timekeeper

| Date | Time-keeper | Description | Rate | Hours | Amount | Intervews and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjustment |
|------|------------|-------------|------|-------|--------|------|------|------|------|------|------|------|
| 12/11/20 | SLL | Receive and review conformed copies of Notice of Appeal and Receipt for filing the same; save documents to server; e-mail copies to attorneys and clients. | $125 | 0 | $0.00 | 0.00 | 0.00 | | | | | |
| | KCA Total | | | 3.1 | $1,860.00 | 0.00 | 1.90 | 0.00 | 0.00 | 0.00 | 1.20 | $ (300.00) |
| 12/21/20 | SLL | Receive and review conformed copies of Transcript Information Form, Appellants' Certificate of Interested Person and Corporate Disclosure, Civil Appeal Statement and | $125 | 0 | $0.00 | | 0.00 | | | | | $ (62.50) |

USCA11 Case: 20-14676    Document: 52    Date Filed: 05/06/2022    Page: 60 of 90

## Billing Entries by Timekeeper

| Date | Time-Keeper | Description | Rate | Hours | Amount | Interviews and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjustment |
|------|-------------|-------------|------|-------|--------|----------------|-------------------------------|----------------|---------------|------------------------------|-------|------------|
| 12/23/20 | SLL | Appearance of Counsel Forms (2); save same to server; e-mail copies to attorneys and clie [Reduced from .5 to 0]<br><br>Receive and review copy of Court's Notice of Telephone Mediation, set for Monday, February 8, 2021, 2:30 p.m., EST; save same to server; calendar Mediation and deadline date for attorneys to submit Confidential Mediation Statement with reminder; e-mail co [Reduced from .4 to 0] | $125 | 0 | $0.00 | | 0.00 | | | | | $ (50.00) |

USCA11 Case: 20-14676    Document: 52    Date Filed: 05/06/2022    Page: 61 of 90

# Billing Entries by Timekeeper

| Date | Time-Keeper | Description | Rate | Hours | Amount | Interviews and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/13/21 | SLL | Receive and review conformed a copy of Appellants' Unopposed Motion for Extension of Time to File the Initial Brief; save same to server; e-mail copy to attorneys and client; recalendar deadline to submit Initial Brief [Reduced from .3 to 0] | | | | | 0.00 | | | | | $ (37.50) |
| 01/15/21 | SLL | Receive and review Court's Order on Appellant's Motion for Extension of Time to File Brief; save same to server; update calendar reminder; e-reminder; | $125 | 0 | $0.00 | | | | | | | |

USCA11 Case: 20-14676   Document: 52   Date Filed: 05/06/2022   Page: 62 of 90

# Billing Entries by Timekeeper

| Date | Time-Keeper | Description | Rate | Hours | Amount | Intervews and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01/27/21 | SLL | Receive and review copy of Order permitting WRA to appear pro hac vice; save same to server; calendar deadline for payment of $50 pro hac vice fee; e-mail copy of Order to attorneys and client [Reduced from .3 to 0] mail copy to attorneys [Reduced from .3 to 0] | $125 | 0 | $0.00 | | 0.00 | | | | | $ (37.50) |
| 02/19/21 | SLL | Receive and review conformed copies of Appellant's Unopposed Motion for Enlargement of Time to File Appellant's Brief and Appellee's Certificate of | $125 | 0 | $0.00 | | 0.00 | | | | | $ (37.50) |

| Date | Time-Keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|------|-------------|-------------|------|-------|--------|------------------------|------------------------------|----------------|---------------|----------------------------------------|-------|-------------|
| 02/22/21 | SLL | Receive and review copy of Court's Order re Appellant's Motion for Extension for filing Appellant's Brief; update calendar deadline; save same to server; e-mail copy to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | | 0.00 | | | | | $ (37.50) |
| 03/02/21 | SLL | Receive and review court Order re Pro Hac Vice status of attorney; save same to server; e-mail copy to attorneys and | $125 | 0 | $0.00 | | 0.00 | | | | | $ (37.50) |

Interested Persons; save same to server; e-mail copies to attorneys and client [Reduced from .3 to 0]

# Billing Entries by Timekeeper

| Date | Time-keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|------|-------------|-------------|------|-------|--------|------------------------|-------------------------------|----------------|---------------|------------------------------------------|-------|-------------|
| 03/22/21 | SLL | Receive and review conformed copy of Appellants' Unopposed Motion to Enlarge Time to File Initial Brief; update calendar due date for Brief and Appendix; e-mail copy to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | | 0.00 | | | | | $ (37.50) |
| 03/23/21 | SLL | Receive and review conformed copy of Court's Order granting Appellants' Unopposed Motion to Enlarge Time to File the Initial Brief; check calendar | $125 | 0 | $0.00 | | | | | | | $ (37.50) |

# Billing Entries by Timekeeper

| Date | Time-keeper | Description | Rate | Hours | Amount | Intervews and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | deadlines; e-mail copy of Order to attorneys and client [Reduced from .3 to 0] | | | $0.00 | | | | | | | |
| **SLL Total** | | | | 0 | $0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/01/21 | WRA | Receive and review correspondence from opposing counsel re: dispensing with appellate mediation on the basis of its being fruitless; respond in agreement | $600 | 0.1 | $60.00 | 0.00 | 0.10 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 02/01/21 | WRA | Receive and review correspondence from opposing counsel re: disclosure about who would be attending mediation. forward to YPH | $600 | | | | | | | | | | $ (412.50) |

# Billing Entries by Timekeeper

| Date | Time-Keeper | Description | Rate | Hours | Amount | Intervievus and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/08/21 | WRA | Mediation: appellate mediation conference; mediation is cancelled for reciprocity | $600 | 0.2 | $120.00 | | | | | | 0.2 | |
| 12/20/21 | WRA | Receive and review court papers: 11th Circuits Circuits determination that oral argument is necessary to decide case; requesting additional copies of briefs | $600 | 0.1 | $60.00 | | 0.1 | | | | | |
| 02/10/22 | WRA | Pre-argument preparation: | $600 | 4.3 | $2,580.00 | | | | | 4.3 | | |
| 02/11/22 | WRA | Court appearance: prepare for and attend oral argument before 11th Circuit Court of Appeals | $600 | 5.8 | $3,480.00 | | | | | 5.8 | | |

O'Laughlin v PBC

# Billing Entries by Timekeeper

| Date | Time-keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|------|-------------|-------------|------|-------|--------|------------------------|-------------------------------|----------------|---------------|------------------------------------------|-------|-------------|
| 04/01/22 | WRA | Receive and review court papers: opinion reversing trial court's summary judgment phone conference with clients (.3) | $600 | 0.7 | $420.00 | | 0.7 | | | | | |
| 04/01/22 | WRA | Phone conference with clients re: opinion | $600 | 0.3 | $180.00 | 0.3 | | | | | | |
| 05/04/22 | WRA | Prepare court papers: review, edit JED's fee-motion conferral draft for appeal | $600 | 1.4 | $840.00 | | | | | | 1.40 | |
| | **WRA Total** | | | **13** | **$7,800.00** | **0.3** | **1.00** | **0.00** | **0.00** | **10.10** | **1.60** | **$ -** |
| 04/03/21 | WRA91 | Prepare court papers: work on initial brief | $325 | 6.1 | $1,982.50 | | | | 6.1 | | | |
| 04/04/21 | WRA91 | Prepare court papers: work on initial brief | $325 | 8.8 | $2,860.00 | | | | 8.8 | | | |
| 07/07/21 | WRA91 | Prepare court papers: reply brief | $325 | 3.5 | $1,137.50 | | | | 3.5 | | | |

# Billing Entries by Timekeeper

| Date | Time-keeper | Description | Rate | Hours | Amount | Intervie ws and confs. | Obtaining & reviewing records | Legal research | Brief Writing | Preparing for & attending oral argument | Other | Adjust ment |
|------|-------------|-------------|------|-------|--------|------------------------|-------------------------------|----------------|---------------|------------------------------------------|-------|-------------|
| 07/08/21 | WRA91 | Prepare court papers: continue working on the reply brief | $325 | 4.1 | $1,332.50 | | | | 4.1 | | | |
| 07/11/21 | WRA91 | Prepare court papers: continue working on the reply brief | $325 | 5 | $1,625.00 | | | | 5 | | | |
| | **WRA91 Total** | | | **27.5** | **$8,937.50** | **0.00** | **0.00** | **0.00** | **27.5** | **0.00** | **0.00** | **$ -** |

# Attachment 3

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| JED | (Appeal) Prepare court papers: notice of appeal | $475 | 0.3 | $142.50 | |
| SLL | Receive and review conformed copies of Notice of Appeal and Receipt for filing the same; save documents to server; e-mail copies to attorneys and clients. | $125 | 0 | $0.00 | |
| SLL | Receive and review conformed copies of Transcript Information Form, Appellants' Certificate of Interested Person and Corporate Disclosure, Civil Appeal Statement and Appearance of Counsel Forms (2); save same to server; e-mail copies to attorneys and clie [Reduced from .5 to 0] | $125 | 0 | $0.00 | $    (62.50) |
| SLL | Receive and review copy of Court's Notice of Telephone Mediation, set for Monday, February 8, 2021, 2:30 p.m., EST; save same to server; calendar Mediation and deadline date for attorneys to submit Confidential Mediation Statement with reminder; e-mail co [Reduced from .4 to 0] | $125 | 0 | $0.00 | $    (50.00) |
| JED | Receive and review court papers: mediation notice | $475 | 0.1 | $47.50 | |
| JED | Receive and review e-mail from opposing counsel re: appellee's position re: extension for the initial brief | $475 | 0.1 | $47.50 | |
| SLL | Receive and review conformed a copy of Appellants' Unopposed Motion for Extension of Time to File the Initial Brief; save same to server; e-mail copy to attorneys and client; re calendar deadline to submit Initial Brief [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| SLL | Receive and review Court's Order on Appellant's Motion for Extension of Time to File Brief; save same to server; update calendar reminder; e-mail copy to attorneys [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |
| JED | Mediation: Prepare correspondence to the mediator re: mediation summary | $475 | 2.2 | $1,045.00 | |
| SLL | Receive and review copy of Order permitting WRA to appear pro hac vice; save same to server; calendar deadline for payment of $50 pro hac vice fee; e-mail copy of Order to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |
| WRA | Receive and review correspondence from opposing counsel re: dispensing with appellate mediation on the basis of its being fruitless; respond in agreement | $600 | 0.1 | $60.00 | |
| WRA | Receive and review correspondence from opposing counsel re: disclosure about who would be attending mediation. forward to YPH for reciprocity | $600 | 0.1 | $60.00 | |
| WRA | Mediation: appellate mediation conference; mediation is cancelled | $600 | 0.2 | $120.00 | |
| SLL | Receive and review conformed copies of Appellant's Unopposed Motion for Enlargement of Time to File Appellant's Brief and Appellee's Certificate of Interested Persons; save same to server; e-mail copies to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |
| SLL | Receive and review copy of Court's Order re Appellant's | $125 | 0 | $0.00 | $    (37.50) |

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| | Motion for Extension for filing Appellant's Brief; update calendar deadline; save same to server; e-mail copy to attorneys and client [Reduced from .3 to 0] | | | | |
| SLL | Receive and review court Order re Pro Hac Vice status of attorney; save same to server; e-mail copy to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |
| KCA | Entry unrelated to the appeal | $600 | 0 | $0.00 | $    (240.00) |
| ALB | Entry unrelated to the appeal | $125 | 0 | $0.00 | $    (125.00) |
| KCA | Entry unrelated to the appeal | $600 | 0 | $0.00 | $    (60.00) |
| KCA | Entry unrelated to the appeal | $600 | 0.1 | $60.00 | |
| JED91 | Prepare court papers: draft for KCA's review motion for additional extension re: initial brief | $300 | 0.7 | $210.00 | |
| JED91 | Review e-mail from opposing counsel re: position on the extension re: the initial brief | $300 | 0.1 | $30.00 | |
| KCA | Review and revise motion for extension of time by 14 days | $600 | 0.1 | $60.00 | |
| SLL | Receive and review conformed copy of Appellants' Unopposed Motion to Enlarge Time to File Initial Brief; update calendar due date for Brief and Appendix; e-mail copy to attorneys and client [Reduced from .3 to 0] | $125 | 0 | $0.00 | $    (37.50) |
| SLL | Receive and review conformed copy of Court's Order granting Appellants' Unopposed Motion to Enlarge Time to File the Initial Brief; check calendar deadlines; e-mail copy of Order to attorneys and client | $125 | 0 | $0.00 | $    (37.50) |

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| | [Reduced from .3 to 0] | | | | |
| JED91 | Receive and review court papers: order on the motion for extension | $300 | 0.1 | $30.00 | |
| WRA91 | Prepare court papers: work on initial brief | $325 | 6.1 | $1,982.50 | |
| WRA91 | Prepare court papers: work on initial brief | $325 | 8.8 | $2,860.00 | |
| JED91 | Prepare court papers: assist with preparing portions of the brief | $300 | 4 | $1,200.00 | |
| JED91 | Assist with research and follow up re: protected activity issue and some of the citations; receive and respond to e-mails from WRA | $300 | 3.4 | $1,020.00 | |
| JED91 | Prepare court papers: begin to prepare the appendix to the initial brief | $300 | 1.1 | $330.00 | |
| KCA | Review and approve for filing initial brief of appellants | $600 | 1.1 | $660.00 | |
| JED91 | Prepare court papers: draft second amended certificate of interested persons | $300 | 0.1 | $30.00 | |
| JED91 | Prepare court papers: draft amended certificate of interested persons | $300 | 0.3 | $90.00 | |
| JED91 | No charge: review and respond to e-mails from YPH/KCA re: certificate of interested persons, clerk's notice, and follow up | $0 | 0.3 | $0.00 | |
| JED91 | Receive and review court papers: certificate of readiness re: record on appeal | $300 | 0.1 | $30.00 | |
| JED91 | Prepare court papers:  continue to work on the appendix; review some of the pleadings while doings so | $300 | 3.4 | $1,020.00 | |
| KCA | Review appendix to initial brief; spot check links and documents | $600 | 0.2 | $120.00 | |

# Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| WRA91 | Prepare court papers: reply brief | $325 | 3.5 | $1,137.50 | |
| WRA91 | Prepare court papers: continue working on the reply brief | $325 | 4.1 | $1,332.50 | |
| WRA91 | Prepare court papers: continue working on the reply brief | $325 | 5 | $1,625.00 | |
| JED91 | Phone conferences with KCA re: instructions re: the reply brief, and follow up | $300 | 0.2 | $60.00 | |
| JED91 | Review and respond to e-mails from KCA re: revisions re: the reply brief, and follow up | $300 | 0.3 | $90.00 | |
| JED91 | Receive and review court papers: answer brief | $300 | 0.3 | $90.00 | |
| JED91 | Prepare court papers: assist with portions of the draft reply brief | $300 | 3.4 | $1,020.00 | |
| KCA | Review and revise reply brief; approve for filing | $600 | 1.1 | $660.00 | |
| KCA | Review answer brief | $600 | 0.5 | $300.00 | |
| JED | Receive and review court papers: oral argument notice | $475 | 0.1 | $47.50 | |
| WRA | Receive and review court papers: 11th Circuits determination that oral argument is necessary to decide case; requesting additional copies of briefs | $600 | 0.1 | $60.00 | |
| WRA | Pre-argument preparation: | $600 | 4.3 | $2,580.00 | |
| JED | Prepare court papers: appellants' notice of supplemental authority; conduct research and review some of the pleadings while doing so | $475 | 0.8 | $380.00 | |
| JED | Receive and review court papers: appellee's notice of supplemental authority | $475 | 0.2 | $95.00 | |
| JED | Conference with WRA re: preparation for oral argument, | $475 | 0.3 | $142.50 | |

## Chronological Listing of All Billing Entries

| Time-keeper | Description | Rate | Hours | Amount | Adjustment |
|---|---|---|---|---|---|
| | assistance and follow up | | | | |
| WRA | Court appearance: prepare for and attend oral argument before 11th Circuit Court of Appeals | $600 | 5.8 | $3,480.00 | |
| WRA | Receive and review court papers: opinion reversing trial court's summary judgment phone conference with clients (.3) | $600 | 0.7 | $420.00 | |
| WRA | Phone conference with clients re: opinion | $600 | 0.3 | $180.00 | |
| JED | Receive and review court papers: Mandate | $475 | 0.3 | $142.50 | |
| JED | Prepare court papers: begin to prepare the fees motion and related fees spreadsheet | $475 | 4.8 | $2,280.00 | |
| JED | No charge: Preparation of electronic mail correspondence to WRA re: follow up and additional information needed to complete the fees motion and spreadsheets (reduce from .2 to 0] | $475 | 0 | $0.00 | $     (95.00) |
| WRA | Prepare court papers:  review, edit JED's fee-motion conferral draft for appeal | $600 | 1.4 | $840.00 | |
| | **Total** | | **70.6** | **$28,217.50** | **$     (932.50)** |

# ATTACHMENT 4

**UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**
**Form to Accompany Application for Attorney's Fees**

Summary of work performed by (name): William R. Amlong

Total compensation requested for this person: $16,737.50

Hourly rate of compensation requested for this person: $600 (and $325 for suspension period)

This person is an:

☒ attorney    ☐ law student/graduate    ☐ certified paralegal    ☐ other:_____

| Category | Total Hours |
|---|---|
| Interviews and conferences | .3 |
| Obtaining and reviewing records | 1 |
| Legal research | 0 |
| Brief writing | 27.5 |
| Preparing for and attending oral argument | 10.10 |
| Other (specify on additional sheets if necessary): | 1.6 |
| Total hours claimed for this person | 40.50 |

*Instructions: on the applicable lines, enter the total time spent in each category. A separate form must be completed for each person for whom time is claimed. Attach contemporaneous time records reflecting all hours listed and indicating the dates on which the work was performed. An affidavit attesting to the truthfulness of the information contained in the application and demonstrating the basis for the hourly rate(s) requested must also accompany the application.*

Rev.: 1/03

**ATTACHMENT 4A**

# Billing Entries by Timekeeper

| Date | Timekeeper | Description | Rate | Hours | Amount | | | |
|---|---|---|---|---|---|---|---|---|
| 02/01/21 | WRA | Receive and review correspondence from opposing counsel re: dispensing with appellate mediation on the basis of its being fruitless; respond in agreement | $600 | 0.1 | $60.00 | 0.10 | | |
| 02/01/21 | WRA | Receive and review correspondence from opposing counsel re: disclosure about who would be attending mediation. forward to YPH for reciprocity | $600 | 0.2 | $120.00 | 0.10 | | |
| 02/08/21 | WRA | Mediation: appellate mediation conference: mediation is cancelled | $600 | 0.1 | $60.00 | | | 0.2 |
| 12/20/21 | WRA | Receive and review court papers: 11th Circuits determination | $600 | 0.1 | $60.00 | 0.1 | | |

# Billing Entries by Timekeeper

| Date | TK | Description | Rate | Hours | Amount | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | that oral argument is necessary to decide case; requesting additional copies of briefs | | | | | | | |
| 02/10/22 | WRA | Pre-argument preparation: | $600 | 4.3 | $2,580.00 | 4.3 | | | |
| 02/11/22 | WRA | Court appearance: prepare for and attend oral argument before 11th Circuit Court of Appeals | $600 | 5.8 | $3,480.00 | | 5.8 | | |
| 04/01/22 | WRA | Receive and review court papers: opinion reversing trial court's summary judgment phone conference with clients (.3) | $600 | 0.7 | $420.00 | 0.7 | | | |
| 04/01/22 | WRA | Phone conference with clients re: opinion | $600 | 0.3 | $180.00 | 0.3 | | | |
| 05/04/22 | WRA | Prepare court papers: review, edit JED's fee-motion conferral | $600 | 1.4 | $840.00 | | | 1.40 | |

USCA11 Case: 20-14676    Document: 52    Date Filed: 05/06/2022    Page: 80 of 90

# Billing Entries by Timekeeper

| Date | | Description | Rate | Hours | Amount | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | WRA Total | draft for appeal | $325 | 13 | $7,800.00 | 0.3 | 1.00 | 0.00 | 0.00 | 10.10 | 1.60 | $ - |
| 04/03/21 | WRA91 | Prepare court papers: work on initial brief | $325 | 6.1 | $1,982.50 | 0.00 | 0.00 | 0.00 | 0.00 | 6.1 | 0.00 | |
| 04/04/21 | WRA91 | Prepare court papers: work on initial brief | $325 | 8.8 | $2,860.00 | | | | | 8.8 | | |
| 07/07/21 | WRA91 | Prepare court papers: reply brief | $325 | 3.5 | $1,137.50 | | | | | 3.5 | | |
| 07/08/21 | WRA91 | Prepare court papers: continue working on the reply brief | $325 | 4.1 | $1,332.50 | | | | | 4.1 | | |
| 07/11/21 | WRA91 | Prepare court papers: continue working on the reply brief | $325 | 5 | $1,625.00 | | | | | 5 | | |
| | WRA91 Total | | | 27.5 | $8,937.50 | 0.00 | 0.00 | 0.00 | 0.00 | 27.5 | 0.00 | $ - |

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
### Form to Accompany Application for Attorney's Fees

Summary of work performed by (name): Karen Coolman Amlong _____

Total compensation requested for this person: $1,860.00 _____

Hourly rate of compensation requested for this person: $600 _____

This person is an:

☒ attorney    ☐ law student/graduate    ☐ certified paralegal    ☐ other:_____

| Category | Total Hours |
|---|---|
| Interviews and conferences | 0 |
| Obtaining and reviewing records | 1.90 |
| Legal research | 0 |
| Brief writing | 0 |
| Preparing for and attending oral argument | 0 |
| Other (specify on additional sheets if necessary): | 1.20 |
| Total hours claimed for this person | 3.10 |

*Instructions: on the applicable lines, enter the total time spent in each category. A separate form must be completed for each person for whom time is claimed. Attach contemporaneous time records reflecting all hours listed and indicating the dates on which the work was performed. An affidavit attesting to the truthfulness of the information contained in the application and demonstrating the basis for the hourly rate(s) requested must also accompany the application.*

Rev.: 1/03

## ATTACHMENT 4B

O'Laughlin v PBC

## Billing Entries by Timekeeper

| Date | TK | Description | Rate | Hours | Amount | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/15/21 | KCA | Entry unrelated to the appeal | $600 | 0 | $0.00 | 0.00 | | | | | | $ (240.00) |
| 03/17/21 | KCA | Entry unrelated to the appeal | $600 | 0 | $0.00 | | | | | | | |
| 03/18/21 | KCA | Entry unrelated to the appeal | $600 | 0.1 | $60.00 | | 0.10 | | | | 0.00 | $ (60.00) |
| 03/20/21 | KCA | Review and revise motion for extension of time by 14 days | $600 | 0.1 | $60.00 | | | | | | 0.1 | |
| 03/11/21 | KCA | Review appendix to initial brief; spot check links and documents | $600 | 0.2 | $120.00 | | 0.20 | | | | | |
| 03/05/21 | KCA | Review and approve for filing initial brief of appellants | $600 | 1.1 | $660.00 | | 1.10 | | | | | |
| 03/13/21 | KCA | Review and revise reply brief; approve for filing | $600 | 1.1 | $660.00 | | | | | | 1.1 | |
| 03/13/21 | KCA | Review answer brief | $600 | 0.5 | $300.00 | | 0.50 | | | | | |
| **KCA Total** | | | | **3.1** | **$1,860.00** | **0.00** | **1.90** | **0.00** | **0.00** | **0.00** | **1.20** | **$ (300.00)** |

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
### Form to Accompany Application for Attorney's Fees

Summary of work performed by (name): Jennifer Daley _____

Total compensation requested for this person: $9,620.00 _____

Hourly rate of compensation requested for this person: $475 (and $300 for suspension period) _____

This person is an:

☒ attorney   ☐ law student/graduate   ☐ certified paralegal   ☐ other:_____

| Category | Total Hours |
|---|---|
| Interviews and conferences | .5 |
| Obtaining and reviewing records | 1.7 |
| Legal research | 3.4 |
| Brief writing | 7.4 |
| Preparing for and attending oral argument | 1.10 |
| Other (specify on additional sheets if necessary): | 12.9 |
| Total hours claimed for this person | 27 |

*Instructions: on the applicable lines, enter the total time spent in each category. A separate form must be completed for each person for whom time is claimed. Attach contemporaneous time records reflecting all hours listed and indicating the dates on which the work was performed. An affidavit attesting to the truthfulness of the information contained in the application and demonstrating the basis for the hourly rate(s) requested must also accompany the application.*

Rev.: 1/03

ATTACHMENT 4C

# Billing Entries by Timekeeper

| Date | Timekeeper | Description | Rate | Hours | Amount | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 11/17/20 | JED | (Appeal) Prepare court papers: notice of appeal | $475 | 0.3 | $142.50 | | | | 0.30 |
| 01/04/21 | JED | Receive and review court papers: mediation notice | $475 | 0.1 | $47.50 | 0.10 | | | |
| 01/12/21 | JED | Receive and review e-mail from opposing counsel re: appellee's position re: extension for the initial brief | $475 | 0.1 | $47.50 | 0.10 | | | |
| 01/26/21 | JED | Mediation: Prepare correspondence to the mediator re: mediation summary | $475 | 2.2 | $1,045.00 | | | | 2.2 |
| 11/05/21 | JED | Receive and review court papers: oral argument notice | $475 | 0.1 | $47.50 | 0.1 | | | |
| 02/10/22 | JED | Prepare court papers: appellants' notice of supplemental authority; conduct research and | $475 | 0.8 | $380.00 | | | 0.8 | |

USCA11 Case: 20-14676     Document: 52     Date Filed: 05/06/2022     Page: 85 of 90

# Billing Entries by Timekeeper

| Date | | Description | Rate | Hours | Amount | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 02/10/22 | | review some of the pleadings while doing so | $475 | 0.2 | $95.00 | 0.2 | | | | |
| 02/10/22 | JED | Receive and review court papers: appellee's notice of supplemental authority | $475 | 0.3 | $142.50 | | 0.3 | | | |
| 02/10/22 | JED | Conference with WRA re: preparation for oral argument, assistance and follow up | $475 | 0.3 | $142.50 | 0.3 | | | | |
| 05/02/22 | JED | Receive and review court papers: Mandate | $475 | 0.3 | $142.50 | | | | | |
| 05/04/22 | JED | Prepare court papers: begin to prepare the fees motion and related fees spreadsheet | $475 | 4.8 | $2,280.00 | | | 4.80 | | 4.80 |
| 05/04/22 | JED | No charge: Preparation of electronic mail correspondence to WRA re: follow up and additional information needed to | $475 | 0 | $0.00 | | | | | 0.00 |

USCA11 Case: 20-14676     Document: 52     Date Filed: 05/06/2022     Page: 86 of 90

$ (95.00)

| Date | | Description | Rate | Hours | Amount | 0.3 | 0.50 | 0.00 | 0.00 | 1.10 | 7.30 | $ (95.00) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | complete the fees motion and spreadsheets (reduce from .2 to 0] | | | | | | | | | | |
| 03/19/21 | JED91 | Prepare court papers: draft for KCA's review motion for additional extension re: initial brief | $300 | 0.7 | $210.00 | | | | | | 0.7 | |
| | **JED Total** | | | **9.2** | **$4,370.00** | **0.3** | **0.50** | **0.00** | **0.00** | **1.10** | **7.30** | **$ (95.00)** |
| 03/19/21 | JED91 | Review e-mail from opposing counsel re: position on the extension re: the initial brief | $300 | 0.1 | $30.00 | | 0.10 | | | | | |
| 03/24/21 | JED91 | Receive and review court papers: order on the motion for extension | $300 | 0.1 | $30.00 | | 0.10 | | | | | |
| 04/05/21 | JED91 | Prepare court papers: assist with preparing portions of the brief | $300 | 4 | $1,200.00 | | | | 4 | | | |
| 04/05/21 | JED91 | Assist with research and follow up re: protected | $300 | 3.4 | $1,020.00 | | | 3.4 | | | | |

USCA11 Case: 20-14676    Document: 52    Date Filed: 05/06/2022    Page: 88 of 90

| Date | Timekeeper | Activity | Amount | Hours | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/05/21 | JED91 | activity issue and some of the citations; receive and respond to e-mails from WRA | $330.00 | | | | | | | | 1.1 |
| 04/05/21 | JED91 | Prepare court papers: begin to prepare the appendix to the initial brief | $300 | 1.1 | | | | | | | |
| 04/06/21 | JED91 | Prepare court papers: draft second amended certificate of interested persons | $300 | 0.1 | $30.00 | | | | | | 0.1 |
| 04/06/21 | JED91 | Prepare court papers: draft amended certificate of interested persons | $300 | 0.3 | $90.00 | | | | | | |
| 04/06/21 | JED91 | No charge: review and respond to e-mails from YPH/KCA re: certificate of interested persons, clerk's notice, and follow up | $0 | 0.3 | $0.00 | 0.30 | | | | | 0.3 |

# Billing Entries by Timekeeper

| Date | Timekeeper | Description | Rate | Hours | Amount | | | | |
|------|-----------|-------------|------|-------|--------|---|---|---|---|
| 04/09/21 | JED91 | Receive and review court papers: certificate of readiness re: record on appeal | $300 | 0.1 | $30.00 | 0.10 | | | |
| 04/09/21 | JED91 | Prepare court papers: continue to work on the appendix: review some of the pleadings while doing so | $300 | 3.4 | $1,020.00 | | | | |
| 07/13/21 | JED91 | Phone conferences with KCA re: instructions re: the reply brief, and follow up | $300 | 0.2 | $60.00 | 0.2 | | | |
| 07/13/21 | JED91 | Review and respond to e-mails from KCA re: revisions re: the reply brief, and follow up | $300 | 0.3 | $90.00 | | 0.30 | | |
| 07/13/21 | JED91 | Receive and review court papers: answer brief | $300 | 0.3 | $90.00 | | 0.30 | | |
| 07/13/21 | JED91 | Prepare court papers: assist | $300 | 3.4 | $300.00 | | | 3.4 | 3.4 |

USCA11 Case: 20-14676   Document: 52   Date Filed: 05/06/2022   Page: 89 of 90

Billing Entries by Timekeeper

| | | | 17.8 | $5,250.00 | 0.20 | 1.20 | 3.40 | 7.4 | 0.00 | 5.60 | $ - |
|---|---|---|---|---|---|---|---|---|---|---|---|
| JED91 Total | with portions of the draft reply brief | | | | | | | | | | |